UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )           No. 3:22-CR-20-KAC-JEM
                                    )
DONALD W. MCCRAINEY,                )
                                    )
                    Defendant.      )

## REPORT AND RECOMMENDATION

This case is before the Court on the Government's motion to revoke the conditions of pretrial release imposed following Defendant Donald McCrainey's arrest and detention hearing in the Eastern District of Michigan [Doc. 48], which was referred to the undersigned [Doc. 51] for preparation of a report and recommendation. 28 U.S.C. § 636. Defendant Donald W. McCrainey filed a response [Doc. 109].

After a *de novo* review, the Court finds that Defendant has proffered information to overcome the presumption of detention and that sufficient conditions exist to reasonably assure the Court of the safety of the community and Defendant's appearance at court proceedings. Accordingly, the Court recommends that the District Judge deny the Government's motion and order Defendant to appear before the undersigned for release on the conditions discussed herein.

## I.      PROCEDURAL BACKGROUND

On March 16, 2022, the Grand Jury returned an Indictment [Doc. 3] charging Defendant Donald W. McCrainey and others with conspiracy to distribute 400 grams or more of fentanyl and 100 grams or more of p-fluorofentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(A).

On March 24, 2022, Defendant McCrainey was arrested and brought before Magistrate Judge Anthony P. Patti for an initial appearance in the Eastern District of Michigan [Doc. 162 p. 1]. Judge Patti held a detention hearing on March 25, 2022 [*id.* at 6] and determined that Defendant McCrainey could be released on conditions. Judge Patti stayed the release order to allow the Government time to appeal [Doc. 51 p. 1; Doc. 162-1 p. 3].

On the same day as the detention hearing, the Government filed an Emergency Motion Under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's Release Order [Doc. 48]. In its motion, the Government objects to Defendant McCrainey's release based on the presumption in favor of detention due to the crime charged, Defendant's role in "coordinat[ing] multiple controlled buys of suspected fentanyl," his history of misdemeanor convictions and felony arrests, Defendant's lack of substantial ties to the Eastern District of Tennessee, and the potential risk of danger to the community posed by Defendant McCrainey's release on conditions. The Government contends that Defendant presented no evidence at the Michigan detention hearing to rebut the presumption of detention. It requested that Defendant's release continue to be stayed until the Court held a hearing in this district and that the Court revoke Judge Patti's release order.

On March 28, 2022, United States District Judge R. Leon Jordan ordered that Judge Patti's release order be stayed, that Defendant be detained pending resolution of the Government's emergency motion and transported to this district, and that the undersigned hold a hearing on the matter of Defendant's detention or release and prepare a report and recommendation on the issue [Doc. 51].[1]

---

[1]     This case was later reassigned to United States District Judge Katherine A. Crytzer for all further proceedings [Doc. 66].

Defendant McCrainey arrived in the Eastern District of Tennessee and appeared before the undersigned for an arraignment on May 11, 2022 [Doc. 83]. Due to concerns about Defendant's ability to understand the proceedings, the arraignment was continued to May 19, 2022 [Doc. 103]. At that time, the Court set a hearing on the Government's motion for June 8, 2022, which was continued to June 16, 2022, at the request of the parties. In the intervening time, Defendant responded in opposition to the Government's emergency motion [Doc. 109], moved for a competency hearing [Doc. 123], and asked to continue the hearing on the emergency motion until after Defendant could receive a mental evaluation by a local provider at the jail [*See id.*].

On June 16, 2022, the date set for a hearing on the Government's motion to revoke the release order, the Court took up Defendant's Motion for a Competency Hearing [Doc. 123] and continuation of the hearing on the Government's motion. Assistant United States Attorney Brent Nelson Jones appeared on behalf of the Government. Attorney John Christopher Barnes represented Defendant McCrainey, who was also present. The Court found reasonable cause to conduct a mental examination and evaluation and a competency hearing pursuant to 18 U.S.C. § 4241 but asked the parties to file briefs on (1) whether it should first resolve the issue of detention or release given § 3145's directive that the Government's motion "shall be determined promptly" and (2) whether the Defendant should receive a mental evaluation at a Bureau of Prisons ("BOP") facility or by a private practitioner. Defendant filed his brief on June 23, 2022 [Doc. 126], and the Government filed a responding brief on June 24, 2022 [Doc. 142, SEALED].

3

The parties[2] appeared on June 27, 2022, for a status conference to address the matters pending before the Court. At that time, the Court informed the parties that it would hear evidence and argument to determine its recommendation to the District Judge on the Government's motion under § 3145 and to determine whether it would order a custodial or outpatient mental examination and evaluation. *See United States v. Parks*, No. 3:17-mj-396-DW, 2018 WL 2090821, at *3–5 (W.D. Ky. May 5, 2018) (explaining that the Government "must offer evidence establishing 'the presence of compelling government interests'" to require an examination in custody rather than on an outpatient basis (quoting *In re Newchurch*, 807 F.2d 404 (5th Cir. 1986)) and citing other cases)).

The parties appeared for the evidentiary hearing on July 12, 2022. AUSA Jones represented the Government, and Mr. Barnes represented Defendant McCrainey, who was also present. The Court received the Government's collective exhibit [Exh. 1] and heard the parties' proffers and arguments. It then took the matters under advisement. Following the evidentiary hearing, the United States Probation Office submitted an Amended Memorandum, dated July 13, 2022, changing its position to recommend release on conditions and providing proposed conditions of release, both of which were also provided to the parties.[3] The parties reconvened by telephone on July 14 for a continuation of the evidentiary hearing, and the Court heard additional argument on the Amended Memorandum. Thereafter, the Court again took the matter under advisement.

---

[2]      At this hearing, Assistant United States Attorney Kevin Quencer appeared on behalf of the Government in place of AUSA Jones [Doc. 139].

[3]      Also on July 13, 2022, defense counsel submitted the curriculum vitae of Dr. Jeffrey Wendt, forensic psychologist, whom Defendant proposes would conduct an outpatient mental evaluation if Defendant is released.

4

## II. SUMMARY OF MARCH 25 DETENTION HEARING IN THE EASTERN DISTRICT OF MICHIGAN

Defendant McCrainey and two of his codefendants, Samuel Harris and Sharde Simmon, appeared for a joint detention hearing before Judge Patti in the Eastern District of Michigan on March 25, 2022. Assistant United States Attorney Timothy Wyse represented the Government. Attorney Thomasine Jefferson represented Defendant McCrainey, who was also present.[4]

The Government presented a combined proffer pertaining to all three defendants. The Government proffered each defendant's Pretrial Services Report ("PSR"), the redacted Indictment in this case, four FBI investigation reports concerning undercover drug transactions (including one involving a traffic stop and subsequent search of a home),[5] three drug certifications from the Drug Enforcement Administration, and a packet of photographs obtained from social media for each defendant. The Government proffered that this case involves a total of at least eighteen (18) controlled, undercover drug buys from the combined coconspirators.

The Government argued that, due to the crimes charged, the defendants are presumed to pose a risk of danger to the community and a risk of nonappearance. It asserted that this case is the product of a well-developed and lengthy investigation that includes numerous controlled buys

---

[4]    An audio recording of the proceeding is available to the public via CM/ECF [*See* Doc. 162-1 p. 3]. The Court has listened to the audio file and summaries it here, as "[t]he district court may rely both on the evidence and offers of proof presented at the original detention hearing before the magistrate judge, as well as additional evidence and offers of proof at its discretion." *United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017) (citations omitted).

[5]    The dates of the undercover drug transactions related to those reports are November 23, 2021, December 20, 2021, December 29, 2021, and January 14, 2022. As explained *infra* Section III, the Government offered evidence of the undercover drug transactions occurring on December 20, 27, and 29, 2021, at the July 12, 2022 evidentiary hearing.

in the Eastern District of Tennessee and a substantial amount of fentanyl, including over 587 grams of fentanyl packaged in 204 individual baggies seized in the search of a home following a traffic stop. The Government argued the quantity of fentanyl along with the hundreds of individual baggies suggests this was a large-scale drug trafficking operation. It noted that several firearms were involved in this case as well.

According to the Government, the defendants all posed a risk of flight as evidenced by their travel from Michigan, their place of residence, to the Eastern District of Tennessee to traffic drugs. It maintained that if released, defendants would have to travel from Michigan to Tennessee, passing through both Ohio and Kentucky, to attend proceedings. It asserted that this travel would present substantial opportunities for defendants to flee, a risk that would not be properly mitigated by the use of GPS monitoring. It also argued defendants have virtually no ties to the Eastern District of Tennessee, aside from the alleged drug trafficking crimes. It argued that the alleged drug trafficking enterprise, which appears to have been lucrative, potentially provided defendants with the means to flee. The Government further pointed out that each of the defendants has at least one failure to appear in their criminal record and is a known substance abuser.

As to danger, the Government stressed the inherent and significant danger that comes with drug trafficking, especially the trafficking of fentanyl and opioids. It pointed out all three defendants participated in controlled buys, even *after* a traffic stop and home search that involved Codefendant Simmon, resulting in the seizure of drugs earlier in this case. The Government argued that this continued conduct shows the defendants continued to present a serious risk of danger to the community. It contended that at least two guns were seized from the vehicle during the traffic stop and at least six were seized as part of the home search. The firearms involved in this case

6

include numerous handguns and both hunting and assault rifles. The Government also explained that each of the defendant's respective social media photo packets depict each defendant in possession of weapons and drugs.

Defendant McCrainey argued through counsel that he should be released on bond with conditions as recommended by the Probation Office for the Eastern District of Michigan. Counsel relied on the PSR's indication that Defendant McCrainey is not a flight risk. Counsel noted that Defendant McCrainey is a 32-year-old man with one child. His sister was present at the detention hearing and was willing to serve as a third-party custodian. Prior to his arrest, Defendant McCrainey was living with the mother of his child, and his counsel noted that he has family support. Counsel further noted Defendant has one prior failure to appear related to a traffic offense and argued Defendant does not have the means to flee, even if he desired to do so. In addition, counsel explained that Defendant McCrainey is not currently on probation or parole in any jurisdiction and that his only convictions occurred when he was a juvenile. Although Defendant may have gotten into trouble in his youth, counsel argued he has not gotten into trouble as an adult. Counsel also informed the Court that Defendant McCrainey has a learning disability and cannot read or write, and he has some mental health-related diagnoses. Counsel stated Defendant was not currently in treatment but would be willing to pursue mental health treatment as a condition of release. According to counsel, Defendant's source of income is Social Security Income ("SSI") for his disability, which he has received his entire life. Counsel argued that Defendant McCrainey has a substantial interest in being released on conditions and litigating this matter because he will lose his SSI benefits if incarcerated, which will affect ability to provide for his child. Furthermore, counsel noted, based on the investigation reports, no firearms were found at Defendant's home,

7

and she pointed out that the social media photographs were old, with at least one dated from 2016.[6] She urged the Court to give the photographs little weight.

In its rebuttal, the Government argued that a third-party custodian would not sufficiently assure the defendants' appearance in Tennessee when the custodian would be in Detroit. It further noted, specifically as to Defendant McCrainey, substance abuse history.

In his findings, Judge Patti reviewed the relevant factors under 18 U.S.C. § 3142(g) and considered potential conditions of release. Judge Patti found that the nature and circumstances of the charged offense weighed in favor of detention. Judge Patti noted the seriousness of the drug trafficking allegations here, which included dangerous substances; however, he noted that a large number of people were involved, that Defendant McCrainey is charged only in the conspiracy count, and that Defendant McCrainey's role on an individual basis in the alleged conspiracy is unclear. Judge Patti also considered that despite being on disability income, Defendant was depicted in the social media photos with a gun and lots of money, which suggests a connection to drug dealing.

As to the second factor, the weight of the evidence of dangerousness and of the risk of nonappearance, Judge Patti noted that the alleged drug trafficking charges and explained that the potential involvement of guns speak to both the risk of flight and dangerousness. He said Defendant was not particularly dangerous to society in recent years given his criminal history but

---

[6]     Judge Patti inquired why Defendant McCrainey—who alleged he had been disabled his entire life—is pictured in the social media photographs holding stacks of money. Counsel responded that the photographs could have been photoshopped and that it was otherwise unclear. Judge Patti also asked why one of the photographs offered by the Government bore no date. Government's counsel was not sure of the date of that photograph.

8

drugs and guns are dangerous, nonetheless, and these types of drugs are dangerous. He also discussed that Defendant McCrainey's ultimate role in the charged conspiracy was unclear, although he was not a "kingpin" in this conspiracy, and the government showed he was involved in at least one controlled buy. He found this factor to be a mixed one.

With regard to Defendant's history and characteristics, Judge Patti noted that Defendant McCrainey had an approximately seventeen-year-old charge for felony robbery when he was fifteen but found no criminal history (other than the instant charges) indicating he had been particularly dangerous to society since then. Judge Patti considered Defendant McCrainey's history of mental health issues and found any history of failure to appear for court was, at most, minor. Judge Patti observed Defendant is unemployed, but through no fault of his own, and that he has clear family support. He also noted Defendant McCrainey was an admitted marijuana user but was apparently not involved in heavier drugs. He found this factor largely favored release.

Judge Patti found the final factor, the nature and seriousness of the danger to the community posed by Defendant McCrainey's release, to be a mixed factor as well. He found some evidence of danger due to the charged drug trafficking conspiracy and the photographs depicting Defendant with a gun but noted no apparent history of risk of danger or of nonappearance. Judge Patti observed Defendant would certainly present a risk of danger if he continued to involve himself in drug dealing but found no evidence that Defendant used firearms in drug dealing. Furthermore, Judge Patti observed that despite the Indictment's alluding to a large cache of guns that was seized, Defendant McCrainey is not charged for any gun-related offenses, unlike some of his codefendants. Finally, Judge Patti considered probation's recommendation of release in this case.

9

Ultimately, Judge Patti found Defendant McCrainey successfully rebutted the presumption in favor of detention. Judge Patti also found that conditions existed that would reasonably assure both his appearance in court as required and the safety of the community. He ordered that Defendant McCrainey be released on a $10,000 unsecured bond with the following conditions: report to pretrial services as directed; surrender his enhanced license and not apply for a new enhanced license or other travel document; restrict travel to the Eastern District of Michigan, the Eastern District of Tennessee, and sites between those two locations for court purposes only; possess no weapons; possess no controlled substances unless prescribed by a licensed physician, including marijuana; submit to drug testing and treatment as directed by pretrial services; undergo a mental health assessment and treatment; and report all law enforcement contact to pretrial services within twenty-four hours of the contact.

After Judge Patti announced his decision for all defendants, the Government moved to stay the release orders of Defendant McCrainey and Codefendant Harris to give the Government time to appeal the release orders in the Eastern District of Tennessee. Judge Patti granted that request.

## III. SUMMARY OF THE JULY 12 EVIDENTIARY HEARING BEFORE THE UNDERSIGNED[7]

The parties appeared before the undersigned for an evidentiary hearing on July 12, 2022. The Government presented a collective exhibit [Exh. 1], which contains three Federal Bureau of Investigation ("FBI") reports from December 21, 27, and 29, 2021; three DEA Chemical Analysis

---

[7] This summary is limited to the evidence and argument presented by the parties related to the issue of whether Defendant McCrainey should be released or detained pending trial. The Court will issue a separate order related to Defendant's mental examination and evaluation.

10

Reports relating to controlled buys discussed in each FBI report; and four photographs taken from social media accounts believed to be associated with Defendant McCrainey.

The December 21, 2021 FBI report describes a controlled purchase of 7.4 grams of heroin by a confidential informant from Codefendant Jeffrey Scales and Defendant McCrainey. According to the report, on December 20, 2021, the informant called Scales to inquire about purchasing heroin. Scales directed the informant to go to "Rocky Top" and indicated he thought "Donald" was "working" that day. The informant arrived at the Rocky Top Apartments and parked by the dumpsters, where he observed another vehicle with occupants who also appeared to be waiting for drugs. The informant called Scales, whose cellphone was answered by a female believed to be Codefendant Keyasia Davis, and reported he was at the pickup location. Twelve minutes later, the informant observed Donald McCrainey arrive in the parking lot and begin selling drugs to individuals waiting there. The informant asked McCrainey for seven grams, but McCrainey said he only had two left. The informant paid McCrainey for seven grams, received two from McCrainey, and, in a call with Scales, was sent to "The Peaks" for the other five. The informant drove to the parking lot of The Peaks apartments, called a number provided by Scales, and spoke to an unknown male. Shortly after the informant's arrival, McCrainey arrived at The Peaks, entered an apartment, and returned to the informant's car with the additional five grams of supposed heroin. The DEA Chemical Analysis Report, which the Government contends relates to the December 20, 2021 controlled buy, states the substance weighed 6.89 grams and contained fentanyl and p-fluorofentanyl.[8]

---

[8] The Court notes that nothing on the DEA Chemical Analysis Report states that the drugs tested were from the December 20, 2021 controlled buy. The Court nonetheless considers that the report relates to that buy on the basis of information submitted by the Government.

The December 27, 2021 FBI report describes a controlled buy of 16.3 grams of heroin and fentanyl by a confidential informant from Codefendant Lauren Manns at the home of Manns's mother Codefendant Michele Maxwell on December 27, 2021. During the drug transaction, Manns made several comments about Donald McCrainey's involvement in drug sales. Following the controlled buy, the informant reported that Manns claimed to have enough drugs to last until Shelton McCrainey returned from Detroit on January 6, 2022, and that Donald McCrainey had been selling 100 grams of drugs, which he obtained from Manns, every other day. The DEA Chemical Analysis Report attached to the December 27 FBI report states that the controlled substance was 13.48 grams of a substance containing fentanyl and p-fluorofentanyl.

The December 29, 2021 FBI report discusses a controlled buy of heroin and fentanyl from Codefendant Sharde Simmon and Defendant McCrainey, occurring on that same day. The report states that the informant made several calls to obtain fifteen grams of heroin from the drug trafficking organization and was repeatedly put off, with Codefendant Simmon at one point telling the informant that someone told her 100 grams had "came up missing." Approximately four hours and fifteen minutes after the informant first called about purchasing heroin, Donald McCrainey and Simmon left an apartment on Cavetton Road, to which the informant had been sent. Simmon got in the informant's car, told him to pull out with McCrainey, and gave the informant 15 grams of a gray powder in exchange for $1050. Simmon then got out of the informant's car at the entrance to the apartment complex, entered McCrainey's car, and drove away. The DEA Chemical Analysis Report attached to the December 29 FBI report states that the substance weighted 14.4 grams and did not contain narcotics. The Government stated this purchase contained only "cut."

The four photographs submitted by the Government come from a "social media scrub" of Defendant McCrainey's accounts. AUSA Jones said he was only submitting photographs posted during the time frame of the alleged conspiracy. The first photograph is from the Facebook account of Dee Smith,[9] depicts Defendant McCrainey holding a large bound stack of currency and is dated July 26, 2020. The second photograph, from the same account and date, depicts a plate holding a large bound stack of currency and loose currency. The third photograph is from the Facebook account of "DeeMck," dated May 17 (no year stated) and depicts Defendant McCrainey holding a long gun with a magazine while standing in front of an infant seat. The fourth photograph is from the Facebook account of Dee Smith, is dated September 11 with no year, and shows Defendant McCrainey holding large bound stacks of currency in each hand. The fourth photograph has the caption "WE PAID" superimposed over Defendant and shows comments wishing Defendant a happy birthday (one stating "Happy Birthday Donald") on the side. AUSA Jones asserted these photographs corroborate Defendant's involvement in drug sales and show unexplained wealth.

Defense counsel proffered that Defendant is a thirty-two and the father of one child. Defendant's sister is willing to serve as his third-party custodian. Defendant has no criminal history of felony convictions and his last charge, prior to the charges in this case, is from 2010. Mr. Barnes stated Defendant has no issues with failing to appear, aside from one incidence on a traffic offense. Defendant currently has no income, lacks the financial means to flee, and cannot

---

[9]     AUSA Jones acknowledged Defendant McCrainey's name is not on the Facebook accounts from which the photographs were obtained. He said an FBI analyst told him that these accounts were associated with Defendant McCrainey.

13

read or write. Defendant does not have a passport and has never left the United States. Defendant has a significant learning disability and is not able to work, subsisting on SSI disability benefits. Mr. Barnes said that once Defendant was incarcerated for thirty days, his SSI benefits ceased, leaving him unable to contribute to the livelihood of his child.

Mr. Barnes proffered that even based on the FBI reports submitted by the Government, Defendant is a low-level part of the alleged conspiracy. According to Mr. Barnes, the Government has produced evidence of one controlled drug transaction for seven grams of a controlled substance, in which Defendant participated with the goading and guidance of other higher-level coconspirators. Mr. Barnes discounted the December 27 FBI report as only others talking about Defendant and stated in the December 29 transaction, no controlled substances were sold.

In argument, the Government stated that the presumption of detention applies in this case and that Defendant is charged with a serious crime. AUSA Jones acknowledged that Defendant McCrainey is not at the top of this drug conspiracy; however, drug trafficking is inherently dangerous and trafficking in heroin and fentanyl is particularly dangerous. AUSA Jones acknowledged that Defendant has numerous charges from when he was a minor and a traffic offense at age twenty-eight. Yet, he said Exhibit 1 shows Defendant has been engaged in drug trafficking in his thirty's. He asserted that the social media photographs show Defendant with large stacks of cash and an AR-style rifle. Also, Defendant is a daily marijuana user, which is legal in Michigan. AUSA Jones conceded that Defendant is not a flight risk but argued he is a danger to the community based upon his trafficking in fentanyl.

Mr. Barnes argued that, as the Government concedes, Defendant is not a flight risk. Defendant is a lifelong resident of Detroit, Michigan, which is where his child resides. Defendant

14

proposes to live with his sister, who will serve as his third-party custodian. Defendant has a supportive family and a stable living situation. Mr. Barnes argued that the FBI reports reveal Defendant's alleged involvement in a single controlled drug purchase at the direction of higher-level individuals. He observed that Defendant was involved in two controlled transactions, one not involving the sale of narcotics, over the duration of the conspiracy. He argued that Defendant's limited involvement in the conspiracy along with his characteristics show that he would not be a danger, particularly if the Court imposes a condition that he not associate with coconspirators or potential witnesses and is supervised by a third-party custodian. Mr. Barnes acknowledged that fentanyl is a dangerous drug but not all persons accused of trafficking in fentanyl should be detained. Instead, the Court must make an individualized determination.

Mr. Barnes asked the Court to give the social media photographs little weight, because the account holder and dates were unknown or older, the purported gun may not be an actual firearm, and social media does not reflect reality. He stated that although Defendant is not able to work, his release would permit him to continue his relationship with his child.

The Government responded that Defendant is alleged to be a part of a serious drug trafficking organization and the law presumes he should be detained. AUSA Jones argued that the Court should release Defendant only if he can overcome this presumption, which Defendant has failed to do. He asserted that although Defendant's sister can serve as a third-party custodian, this does not overcome Defendant's dangerousness, stemming from his dealing fentanyl in this district in December 2021. AUSA Jones acknowledged that Defendant was not selling drugs alone but argued that all of the codefendants in this case were acting in concert with each other. He stated that Defendant McCrainey's brother and girlfriend are codefendants in this case.

15

On July 13, 2022, the United States Probation Office ("USPO") submitted an Amended Memorandum on the matter of Defendant McCrainey's detention or release. The Amended Memorandum discusses the suitability of Defendant McCrainey's sister to be his third-party custodian. It notes that Defendant's sister resides in Eastpointe, Michigan, and has been employed with an automotive plant since 2012. She has assisted Defendant with financial matters, including serving as Payee for his SSI benefits, for eighteen years. Defendant's sister states she was not aware of Defendant engaging in illegal activity while he lived in Detroit and that she would not have a problem notifying the probation officer of any noncompliance. Following the information presented at the July 12 evidentiary hearing and the investigation of Defendant's proposed residence and third-party custodian, the USPO changed its recommendation from detention to release on conditions.

Along with the Amended Memorandum, the USPO submitted the following proposed conditions of release: Candace McCrainey of Eastpointe, Michigan, serve as third-party custodian; Defendant report to his supervising probation officer as directed; travel restricted to the Eastern District of Michigan and the Eastern District of Tennessee for "court purposes only"; Defendant have no contact with victims, witnesses or codefendants; Defendant get mental health treatment if directed by supervising officer and comply with medication regimen; Defendant waive confidentiality and allow USPO to communicate with mental health treatment provider; Defendant not possess firearms or other weapons; Defendant not use alcohol at all; Defendant submit to drug testing; Defendant not possess controlled substances unless prescribed; Defendant participate in drug treatment if directed by supervising officer; Defendant report any contact with law enforcement to his supervising officer; Defendant comply with all instructions and answer

16

truthfully any inquiries from his supervising officer; and Defendant obtain an appointment for a mental health assessment within thirty days of release and provide proof thereof to his supervising officer.

On July 14, 2022, counsel appeared before the undersigned by telephone in a continuation of the July 12 evidentiary hearing. The Court confirmed both parties received the Amended Memorandum and proposed conditions of release. AUSA Jones stated that the Government still maintains its position that Defendant should be detained pending trial. He stated that if the Court recommended release, the Government had no objection to the conditions of release proposed by the USPO. Mr. Barnes stated that Defendant McCrainey also had no objection to the proposed conditions of release. He stated that Defendant appreciates and agrees with the United States Probation Office's recommendation of release.

## IV. ANALYSIS

The Bail Reform Act of 1984 provides for the release of all persons accused of a federal crime, either on personal recognizance or an unsecured appearance bond, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If release on personal recognizance or an unsecured appearance bond will not reasonably assure the person's appearance or the safety of the community, the judicial officer shall order that the individual be released on conditions. 18 U.S.C. § 3142(c). Upon the government's motion, however, the judicial officer may detain a person charged with certain serious federal crimes or who poses a "serious risk" of flight, witness intimidation, or obstruction of justice, if the judge finds, after a detention hearing, "that no condition or combination of conditions will reasonably

17

assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(f) & (e).  The judge may not detain a defendant unless the government proves by a preponderance of the evidence that the individual is a flight risk and/or by clear and convincing evidence that the person is a danger to the community or others. *See* 18 U.S.C. § 3142(f).

Here, the Government moved for detention, and Magistrate Judge Patti held a detention hearing, because Defendant McCrainey is charged with an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more.  *See* 18 U.S.C. § 3142(f)(1)(C).  Due to the crime charged, a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]"  18 U.S.C. § 3142(e)(3)(A).  In this respect, the Indictment provides probable cause to believe that the Defendant has committed an offense under the Controlled Substances Act for which he faces a maximum sentence of ten years or more.  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption).  This presumption places the burden of production with a defendant, while the government retains the burden of persuasion.  *Stone*, 608 F.3d at 945.  To satisfy his burden of production, a defendant must present at least some evidence that he is not a danger or a flight risk. *Id.*  Even when a defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors, because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial."  *Id.*

18

"If a person is ordered released by a magistrate judge . . . , the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain the defendant *de novo*.[10] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000) (holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that *de novo* review is appropriate); *see also see also United States v. Rosello*, No. 1:21-cr-7, 2021 WL 5759142, at *1 (S.D. Ohio Dec. 4, 2021) (quoting *Yamini*); *United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful de novo review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075, at *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order "shall be determined promptly." 18 U.S.C. § 3145(a).

To determine whether Defendant McCrainey should be released or detained pending trial, the Court must weigh the factors set out in 18 U.S.C. § 3142(g), along with the presumption from 18 U.S.C. § 3142(e)(3)(A), and conditions of release, to determine if release on conditions will reasonably assure Defendant's appearance at Court proceedings and the safety of any person and

---

[10] Although a magistrate judge cannot review another magistrate judge's decision to release a defendant, a district judge may refer the government's motion to revoke a release order to a magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26-KKC-REW, 2017 WL 5711438, at *2–3 (E.D. Ky. Nov. 17, 2017), *adopted by*, No. 5:17-CR-26-KKC-REW, 2017 WL 5710443 (E.D. Ky. Nov. 27, 2017). The district judge will ultimately conduct a *de novo* review of the detention issue by reviewing the report and recommendation, which considers all the evidence offered to that point. *Id.* at *3.

the community. The Government concedes and the Court agrees that Defendant McCrainey does not present a flight risk. The Court therefore examines only whether clear and convincing evidence shows Defendant to be a danger to the community and, if so, whether conditions can mitigate that danger.

Before turning to the § 3142(g) factors, the Court finds, as stated above, a presumption in favor of detention applies in this case. Section 3142(e)(3)(A) provides that, if a defendant is charged with an offense under the Controlled Substances Act, for which a maximum term of imprisonment of ten years or more is prescribed, a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. Defendant McCrainey is charged with conspiring to distribute fentanyl [Doc. 3], which is a qualifying offense under § 3142(e)(3)(A).

The next question, then, is whether Defendant McCrainey has rebutted the presumption. Defendant's burden to rebut the presumption "is not heavy" but he must come forward with some evidence. *Stone*, 608 F.3d at 945–46. Defendant has done so here. He proffered that his sister Candace McCrainey agrees to be his third-party custodian, to allow Defendant to live with her, and to contact the USPO if Defendant is not compliant with his conditions of release. The Probation Office has vetted Ms. McCrainey as a third-party custodian and believes that she is a suitable custodian and that her residence is a suitable place for Defendant McCrainey to reside if released. In addition, as discussed more fully below, Defendant has little recent criminal history, and most of his criminal history stems from his youth. The Court finds Defendant has therefore rebutted the presumption in § 3142(e)(3) that he is not a danger to the community. *See, e.g.*, *United States v. Johnson*, No. 5:20-cr-33-GFVT-MAS, 2020 WL 2413823, at * 4 (E.D. Ky. May 15, 2020)

20

(finding that the defendant rebutted the presumption of dangerousness where he offered a third-party custodian). But the Court still considers the presumption in its decision of whether there are any conditions that could assure community safety. *United States v. Hinton*, 113 F. App'x 76, 78 (6th Cir. 2004) ("The presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" (quoting *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986))).

Turning to the § 3142(g) factors, the Court first considers the nature and circumstances of the charged offense. 18 U.S.C. § 3142(g)(1). Defendant McCrainey is charged, along with ten named codefendants and unnamed others, with conspiring to distribute four hundred grams or more of fentanyl over a twenty-month period [Doc. 3]. Over four hundred grams of fentanyl is a large amount of a particularly dangerous controlled substance. *See United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (finding fentanyl to be an "exceptionally dangerous drug" under § 3142(g)(1)); *see also United States v. McCollum*, No. 3:21-CR-35-TAV-DCP-2, 2021 WL 4468937, at *2 (E.D. Tenn. Sept. 29, 2021) (upholding magistrate judge's finding that fentanyl is a particularly dangerous drug under § 3142(g)(1)). The Court finds that the nature and circumstances of the offense show that Defendant is a serious danger to the community. This factor weighs in favor of detention. 18 U.S.C. § 3142(g)(1).

The weight of the evidence of the Defendant McCrainey's dangerousness also weighs in favor of detention. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. Exhibit

1 shows that Defendant McCrainey sold fentanyl and fentanyl analogues to a confidential informant on December 20, 2021. The December 21, 2021 FBI report reveals the confidential informant observed Defendant McCrainey selling drugs to other individuals in the parking lot of an apartment complex such that, when the informant approached him, McCrainey no longer had sufficient drugs to fill the informant's order of seven grams of heroin and had to meet the informant at another location to supply him with the balance of the order. [11]

Additionally, the December 27, 2021 FBI report, discusses the informant's conversation with Codefendant Lauren Manns about Defendant McCrainey's involvement in the drug trafficking organization, in which Manns told the informant that Defendant had not started "working" yet that day, that Defendant had previously awakened her in the night requesting drugs, and that Defendant had previously sold some "bad heroin." Following this controlled buy with Manns, the informant told law enforcement that Defendant McCrainey is selling 100 grams of heroin every other day. The December 27, 2021 FBI report further describes the informant's hours-long attempt to buy fifteen grams of heroin from the drug trafficking organization and Defendant's involvement in the delivery of suspected heroin to the informant. As the Government acknowledges, Defendant McCrainey does not appear to be an organizer for the drug trafficking organization. Even so, Exhibit 1 reveals that Defendant played an integral role in the delivery and sale of 100's of grams of fentanyl in late December 2021.

---

[11] The Court notes that while the Government informed Judge Patti that there were at least eighteen undercover controlled buys as part of this investigation, the Government presented only two to this Court that involved Defendant McCrainey—the December 20, 2021 buy and another buy on December 29, 2021 that involved only "cut."

22

As demonstrated by Exhibit 1, Defendant repeatedly engaged in drug trafficking. Given his activity, the weight of the evidence of Defendant McCrainey's dangerousness is great. Indeed, drug trafficking is inherently dangerous, *United States v. Hernandez*, No. 1:02–CR–006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002), and "[i]t is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community—and the risks associated with fentanyl specifically are even greater," *Taylor*, 449 F. Supp. 3d at 673.

Next, the Court must consider a host of factors relating to the history and characteristics of the Defendant. 18 U.S.C. § 3142(g)(3)(A). The Court finds that parts of Defendant's history and characteristics lend some support to detention. The PSR reflects that Defendant reported using marijuana daily.[12] The PSR also reveals that although Defendant has no convictions, he was arrested eight times between ages fifteen and twenty, for offenses ranging from vehicle theft to forgery to drug possession. *See Tolbert*, 2017 WL 6003075, at *4 (holding that "the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention); *see also United States v. Acevedo-Ramos*, 755 F.2d 203, 209 (1st Cir. 1985) (finding that the authors of the Bail Reform Act of 1984 intended for judges to "rely on a defendant's past bad conduct that had led to indictment but not conviction" under some circumstances). The Court, however, gives little weight to Defendant's prior history of arrests given how long ago they occurred and that Defendant

---

[12] The Court notes that marijuana use is not illegal in Michigan; however, Defendant reported using marijuana since age fourteen. Judge Patti prohibited Defendant from using marijuana on release, as would this Court.

23

has not sustained any additional criminal history, except for a misdemeanor traffic offense in 2018, for almost twelve years.

Other parts of Defendant's history and characteristics lend support for release. Defendant is a thirty-two-year-old, lifelong resident of Detroit, Michigan. Although in good physical health, Defendant has a learning disability, cannot read or write, and receives SSI disability benefits, which are suspended after a period of incarceration. Defendant McCrainey has previously sought mental health treatment but he was not in any modality of mental health treatment at the time of his arrest. Defendant has family support from his sister and close relationships with his child and his child's mother, who both live in Detroit, Michigan. Defendant's mother was his guardian prior to her passing in 2019, and Defendant's sister has assisted Defendant financially. While Defendant McCrainey lived alone in Detroit before this charge, Defendant has informed the Court that he would reside at a stable residence, the home of his sister in Eastpointe, Michigan, if he were released. Defendant informed the United States Probation office that he did not keep firearms at his previous residence. These characteristics favor release on conditions that mitigate the danger Defendant presents given his alleged drug trafficking and daily use of marijuana.

As for "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," 18 U.S.C. § 3142(g)(4), like Judge Patti, the undersigned finds that the danger Defendant presents to the community is from continued drug trafficking. Defendant's involvement in the controlled buys and his presence in a residence from which illegal drugs and guns were seized show that he presents a particular danger to the community if he were to engage in drug trafficking. *See Hernandez*, 2002 WL 1377911, at *2 (holding that "the risk of

24

continued drug-trafficking while released on bail constitutes a significant danger to the safety of the community").  The Court finds this factor also weighs in favor of detention.

Considering all of the § 3142(g) factors and the presumption, the Court finds that the information provided in the PSR and Exhibit 1 establishes by clear and convincing evidence that the Defendant poses a danger to the community or another person.  Even so, like Judge Patti, the Court finds there are conditions of release that will reasonably assure the safety of the community, which are set forth below.  Defendant's residing with his sister in Eastpointe Michigan, away from the locus of the alleged drug trafficking, and a requirement that he have no contact with any codefendants (including his girlfriend Codefendant Simmon and his brother Codefendant Shelton McCrainey), potential witnesses, or any person who is a known felon or drug trafficker would mitigate the Court's concern that Defendant could engage in continued drug trafficking if released pending trial.[13]  The United States Probation Office has found Ms. McCrainey to be a suitable third-party custodian, and although she was assisting Defendant McCrainey financially at the time of the alleged conspiracy, the Court notes he was living in Detroit, away from her residence in Eastpointe.  Further, Defendant's participation in a program of mental health treatment, as directed by his supervising officer, aids in mitigation of Defendant's dangerousness, as does the requirement that Defendant not use or possess any controlled substances, including marijuana.

V.    CONCLUSION

Based upon a *de novo* review of all the evidence presented at the detention hearing in the Eastern District of Michigan and to the undersigned, and considering the factors set forth in

---

[13]    This condition is more stringent than the condition proposed by the Probation Office.  The Court, however, finds it appropriate to mitigate the danger Defendant presents if released.

18 U.S.C. § 3142(g), as well as the recommendation of the United States Probation Office, the Court finds that the appearance of Defendant McCrainey and the safety of the community can reasonably be assured by releasing Defendant McCrainey on a combination of conditions. In addition to the standard conditions that Defendant appear for court proceedings when required and not commit any additional crimes,[14] the Court finds the following conditions will reasonably assure Defendant's appearance and the safety of the community:

    (1)    Defendant shall reside in the home of his sister Candace McCrainey of Eastpointe, Michigan, and Ms. McCrainey shall serve as Defendant's third-party custodian;

    (2)    Defendant shall report to his supervising probation officer as directed;

    (3)    Defendant's travel is restricted to the Eastern District of Michigan and the Eastern District of Tennessee (for purposes of attending Court proceedings, meeting other court-ordered obligations, or meeting with counsel) unless permission is granted otherwise by Defendant's supervising probation officer;

    (4)    Defendant shall have no contact with victims, witnesses or codefendants or with any known felons or drug dealers;

    (5)    Defendant shall get medical or mental health treatment if directed by his supervising probation officer and shall comply with any prescribed regimen of medication or treatment;

    (6)    Defendant shall waive confidentiality and allow the USPO to communicate with his mental health treatment provider(s);

    (7)    Defendant shall not possess a firearm, destructive device, or other weapon;

---

[14]    *See* AO 199A (Rev. 06/19).

26

(8)     Defendant shall not use alcohol at all;

(9)     Defendant shall not possess or use controlled substances, to include marijuana, unless prescribed;

(10)   Defendant shall participate in drug testing and drug treatment as directed by his supervising probation officer;

(11)   Defendant shall report any contact with law enforcement to his supervising probation officer;

(12)   Defendant shall comply with all instructions by his supervising probation officer and shall answer any inquiries from his supervising officer truthfully; and

(13)   Defendant shall obtain an appointment for a mental health assessment within thirty days of release and provide proof thereof to his supervising probation officer.[15]

Accordingly, the undersigned **RECOMMENDS** that the District Judge **DENY** the Government's Emergency Motion Under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's Release Order [**Doc. 48**].    To the extent the District Judge accepts the undersigned's recommendation to release Defendant McCrainey, the undersigned further **RECOMMENDS** that the District Judge **REFER** the matter of Defendant's release on conditions to the undersigned for a prompt hearing.  At that hearing, the undersigned can enter an order of release on conditions and release Defendant on the conditions discussed herein, or on any other conditions the District Judge considers appropriate.

---

[15]     The Court does not recommend that Defendant surrender his enhanced license to the USPO.  Although an enhanced license allows travel outside the United States to some limited destinations, the Court finds Defendant is not a flight risk.  Moreover, Defendant will need to travel to mental health treatment and other appointments.

27

Due to the need to determine this issue promptly, 18 U.S.C. § 3145, and given the parties' consent to an abbreviated objection period, any objections to this report and recommendation must be served and filed on or before **July 21, 2022**.[16]  Any response to objections must be filed on or before **July 25, 2022**.  If either party deems no objection or response is necessary, it shall file a notice of same as soon as possible and no later than the deadline for objection or response.

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[16]     Failure to file objections within the time specified waives the right to review by the District Court.  Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time waives the right to appeal the district court's order).  The District Judge need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).